## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| ARC Venture Holding, Inc., | Case No. BKY 08-46367 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Southwest-Tex Leasing Co., Inc., d/b/a/ Advantage | Case No. BKY 08-46368 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Advantage Rent-A-Car, Inc., | Case No. BKY 08-46369 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Coast Leasing Corp., | Case No. BKY 08-46370 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Floral Leasing Corp., | Case No. BKY 08-46371 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Iliad Leasing Corp., | Case No. BKY 08-46372 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Miso Leasing Corp., | Case No. BKY 08-46373 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Nugget Leasing Corp., | Case No. BKY 08-46374 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Okra Leasing Corp., | Case No. BKY 08-46375 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Rainier Leasing Corp., | Case No. BKY 08-46376 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| San Antonio Rental & Leasing Co., Inc.,<br>Debtor. | Case No. BKY 08-46377<br>Chapter 11 Case |
| Steamboat Springs Rental & Leasing Co., Inc.,<br>Debtor. | Case No. BKY 08-46379<br>Chapter 11 Case |
| Sun Leasing Corporation,<br>Debtor. | Case No. BKY 08-46380<br>Chapter 11 Case |
| Tradewinds U-Drive, Inc.,<br>Debtor. | Case No. BKY 08-46383<br>Chapter 11 Case |
| Ute Leasing Corporation,<br>Debtor. | Case No. BKY 08-46384<br>Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR EXPEDITED HEARING AND FOR ORDER AUTHORIZING DEBTORS TO PAY ACCRUED AND OUTSTANDING PREPETITION WAGES, PAYROLL TAXES AND EMPLOYEE BENEFITS**

TO:    The United States Trustee and other entities specified in Local Rule 9013-3(a)(2).

1.    The above-named Debtors ("Debtors") move this Court for the relief requested below and gives notice of hearing.

2.    A hearing on this motion will be held at **9:30 a.m. on December 11, 2008**, before the Honorable Dennis D. O'Brien, in **Courtroom No. 2B, at 200 United States Courthouse, 316 North Robert Street, St. Paul, Minnesota.**

3.    Local Rule 9006-1(b) provides deadlines for responses to this motion.  However, given the expedited nature of the relief sought, Debtor does not object to written responses being served and filed immediately prior to the hearing on the motion.  **UNLESS A RESPONSE**

OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE

MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and

1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This is a core proceeding.  The petitions

commencing these chapter 11 cases were filed on December 8, 2008 (the "Filing Date").  The

cases are now pending in this Court.

5.      This motion arises under 11 U.S.C. §§ 105(a), 363, 549, 1107 and 1108 and Fed.

R. Bankr. P. 6003.  This motion is filed under Local Rules 9013-1 through -3.  Notice of the

hearing on this motion is provided pursuant to Bankruptcy Rule 2002(a) and Local Rules 9013-1

through 3 and 2002-1(b).  Debtors request an order authorizing them to pay prepetition wages

and employee benefits to current employees, and authorizing Debtors to use cash collateral to

make such payments to the extent necessary to avoid immediate and irreparable harm.

## BACKGROUND

6.      **Description of the Debtors.**  The Debtors in these cases are owned directly or

indirectly by Dennis E. Hecker, as set out below.  The Debtors' principal business is car rental to

the leisure, business and government traveler.  The Debtors lease cars from Rosedale Dodge, Inc.

d/b/a Rosedale Leasing ("RDI"), Walden Fleet Services II LLC ("Walden"), and Rosedale Fleet

Leasing II LLC ("RFL"), which are directly or indirectly owned by Mr. Hecker.

7.      The Debtors do business under the brand name Advantage Rent-A-Car

("Advantage"), which has executive offices in Minneapolis, Minnesota and administrative staff

in San Antonio, Texas.  Advantage provides travel and leisure, lifestyle, business, government

and insurance replacement rentals in more than fifty U.S. locations and one hundred thirty

affiliates internationally.

8.      Debtor ARC Venture Holding, Inc. ("Holding") is a Delaware corporation owned 100% by Mr. Hecker.  It owns 100% of Debtor Southwest-Tex Leasing Co, Inc. ("SW-Tex").  SW-Tex owns 100% of the other Debtors.  SW-Tex operates rental car offices in 7 locations in Texas and provides administrative services for all of the Debtors.  Advantage Rent-A-Car, Inc. owns the intellectual property and related intangible assets licensed to the Advantage operating entities.

9.      The other Debtors operate rental car offices in various states:  Coast Leasing Corporation has four offices in California; Floral Leasing Corp.  has six offices in Florida; Iliad Leading Corp. has two offices in Illinois; Miso Leasing Corp. has one office in Missouri; Nugget Leasing Corp. has one office in Nevada; Okra Leasing Corp. is being closed in Oklahoma; Rainier Leasing Corp. has one office in Washington state; San Antonio Rental & Leasing Co., Inc. has one office in Arizona; Steamboat Springs Rental & Leasing Co., Inc. has five offices in Colorado; Sun Leasing Corporation has two offices in New Mexico; Tradewinds U-Drive, Inc. has two offices in Hawaii; and Ute Leasing Corporation has one office in Utah.

10.      **Events Leading To Filing.**  In 2006, following lengthy negotiations and at the behest of Chrysler Financial, Holding purchased the stock of the Advantage entities, which had previously been financed by Chrysler Financial and were in serious financial difficulty.  Under the agreements reached in 2006, Advantage leased the vast majority of the cars in its rental fleet from RDI, RFL, and Walden.  At its largest, Advantage comprised 140 locations with 1,500 employees and a fleet of 16,000 rental vehicles spread across 12 states in the Midwest, South and West.  Chrysler Financial retained a security interest in approximately 9,000 vehicles (Chrysler, GM, Hyundai, and Suzuki) owned by RDI and leased to the Debtors.

11.     Market conditions, resulting in a drought of air travelers, have led to significant decreases in revenues for all of Debtors' business activities, particularly in the last three months. Efforts to reduce locations and expenses have not kept up with the shrinking demand for Advantage's rental cars.  Mr. Hecker has infused approximately $50 million into Advantage, including cash investments of about $15 million in 2008.  Notwithstanding these cash infusions, Advantage has been unable to remain timely in payments due trade suppliers in the ordinary course, and has not had sufficient cash to fund lease payments due RDI for the months of September, October and November 2008.  The Debtors have suffered cash and non-cash losses totaling approximately $23.4 million for the first nine months of 2008, with estimated losses in October 2008 of about $7.0 million and in November 2008 of about $12.0 million.

12.     Due to Advantage's failure to make lease payments, RDI in turn has not been able to make payments to Chrysler Financial on the fleet line or to its other lenders.  Following Chrysler Financial's notices of default and termination of Chrysler vehicle leases, on November 13, 2008 the Debtors that operate rental offices entered into a written agreement with Chrysler Financial to allow and to cooperate with Chrysler Financial's recovery of its vehicle and other collateral under the terminated leases.

13.     This resulted in a reduction of the fleet available for rental from 13,500 to 6,600 vehicles and required that Debtors close a number of locations to be able to continue serving customers at other larger locations.  The Debtors determined that Chapter 11 filings were necessary.

## PREPETITION EMPLOYEE OBLIGATIONS

***Wages, Salaries and Other Compensation***

14.     Collectively, Debtors currently employ approximately 558 employees with a two-week payroll and commissions obligation of approximately $602,000 (the "Compensation Obligation")[1] consisting of approximately $443,000 of net payroll and approximately $159,000 in payroll-related taxes.   Employees are paid every two weeks and the next payroll, covering time worked from November 22, 2008 through December 5, 2008, would be scheduled to be funded Thursday, December 11, 2008 for disbursement to employees the following day.   The numbers of employees and payroll obligations are set forth on the attached Exhibit A.   An estimate of the number of employees with each Debtor is set forth on Exhibit B.

15.     Debtors request authorization to pay the prepetition and postpetition portions of the Compensation Obligation, including authorization to honor outstanding wage and commission obligations, for the period in which the Filing Date occurred.   Such payment will include payment of prepetition wages for 16 days, for a total of approximately $688,000.   All payments will be subject to the priority limitations of 11 U.S.C. § 507(a)(4) as to each employee, and Debtors will not make payments that exceed the priority limits as to any employee.

16.     Debtors seek authority to pay the Compensation Obligation, or a portion thereof, to convince employees to remain in the employ of Debtors.   Therefore, to the extent that an employee is unwilling to continue employment with a Debtor, the Debtor will not pay that employee's obligation.

---

[1]    The Compensation Obligation is an estimate of the accrued unpaid wages as of the Filing Date.  The actual amount of the Compensation Obligation may be different.

### *Employee Benefits*

17.    Debtors also furnish benefits to employees. These include the normal health, life, and dental benefits most companies offer to their employees.  These benefits are referred to collectively as "Employee Benefits."  The two-week premium and benefit cost is approximately $53,000, and is detailed by Debtor on Exhibit A.  Debtors request authorization to continue make Employee Benefit payments for prepetition services.

### *Expense Reimbursement*

18.    Debtors customarily reimburse employees who personally incur a variety of business expenses in the ordinary course of performing their duties on behalf of Debtors.  These reimbursable business expenses include, among other expenses, those incurred in connection with travel, office supplies, long-distance telephone charges, and cellular phone charges and maintenance supplies.  Because the employees do not always submit claims for reimbursement promptly, it is difficult for a Debtor to determine the exact amount outstanding at any particular time.  Debtors estimate that, as of the Filing Date, obligations for reimbursements to employees should not exceed $5,000 (the "Reimbursement Obligations").  Debtors request authorization to continue paying the Reimbursement Obligations.  Again, Debtors seek authorization only to reimburse employees who will continue their employment with Debtors.

### *Other Payments*

19.    In the ordinary course, Debtors withhold from employee paychecks for garnishments, child support obligations and the like (the "Employee Funds").  These funds are property of Debtors' employees, and Debtors request authorization to continue paying over these funds as directed by or on the employee's behalf.

**RELIEF REQUESTED**

20.      Debtors request authority to continue paying the Compensation Obligations, the

Employee Benefits, and the Reimbursement Obligations (collectively, the "Prepetition Employee

Obligations") and the Employee Funds with respect to employees employed on the Filing Date,

in amounts not to exceed $10,950 as to any employee (not including Employee Funds).  Debtors

will calculate the priority amount as to each employee under 11 U.S.C. § 507(a)(4) and as to the

employee group under 11 U.S.C. § 507(a)(5) and believes that the Prepetition Employee

Obligations can be paid in full within the statutory limits.

21.      Debtors' employees are essential to the success of each business.  Without

employees, Debtors will be unable to operate their businesses.  The continued operation of

Debtors' business and successful reorganization or value in a sale manifestly depend on the

retention of the services of the employees.  Consequently, it is critical that Debtors be authorized

to continue the ordinary course personnel policies, programs and procedures that were in effect

prior to the Filing Date.  If the checks issued and fund transfers requested in payment of the

Prepetition Employee Obligations are dishonored, or if such accrued obligations are not timely

paid postpetition, Debtors' employees will suffer personal hardship and may be unable to pay

their daily living expenses.  Likewise, it would be inequitable to expect Debtors' employees to

bear personally the business expenses that were incurred on behalf of Debtors with the

expectation that they would be reimbursed.

22.      Payment of all Prepetition Employee Obligations in accordance with Debtors'

prepetition business practices is in the best interests of Debtors, all creditors and all parties in

interest, and will enable Debtors to continue to operate the businesses in an economic and

efficient manner with minimal disruption.  A significant deterioration in employee morale at this

critical time undoubtedly would have a devastating impact on Debtors, the value of the businesses and the ability to reorganize or the value the assets would receive as a going concern.

23.     Debtors submit that because payroll taxes constitute "trust fund" taxes, the payment of such taxes will not prejudice unsecured creditors of Debtors, given that the relevant taxing authorities would hold priority claims under § 507(a)(8) of the Bankruptcy Code in respect of such obligations.

24.     Debtors further submit that all employee-requested payroll deductions including the Employee Funds are made from amounts earned by, and otherwise payable to, Debtors' employees.  Accordingly, continuation of such deductions will not diminish the estates or otherwise prejudice any creditors.

25.     Finally, Debtors request that authorization of the payment of the Prepetition Employee Obligations not be deemed to constitute postpetition assumption or adoption of any contract, policy, plan, program, or employment agreement pursuant to section 365 of the Bankruptcy Code.  Debtors are in the process of reviewing these matters and reserves all of their rights under the Bankruptcy Code with respect thereto.

26.     Fed. R. Bankr. P. 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding…a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition.

Payment of the Prepetition Employee Obligations constitutes payment of a claim arising before the filing of the petition.  In this case, a loss of Debtors' employees due to lack of payment of any portion of prepetition wages would constitute an "immediate and irreparable harm" to the

estate because such a loss would significantly diminish the going-concern value of the Debtors' assets.

27.     For the same reasons, and because Debtors need to fund the December 5, 2008 payroll, an expedited hearing is warranted.

28.     Pursuant to Local Rule 9013-2(a), this Motion is verified and is accompanied by a Memorandum, Proposed Order and proof of service.

29.     Pursuant to Local Rule 9013-2(c), Debtors give notice that they may, if necessary, call Dennis E. Hecker, Chairman & C.E.O. or Erik P. Dove, Vice President, Treasurer and Assistant Secretary, to testify about the factual matters raised in this motion.   Their business address is 500 Ford Road, Minneapolis, Minnesota.

WHEREFORE, Debtors move the Court for an order

(a)     Granting an expedited hearing;

(b)     Authorizing Debtors to pay accrued prepetition wages, salary, payroll taxes, employee designated funds, and other employee benefits identified herein, in amounts not to exceed any applicable priority dollar limit as to any employee or employee group; and

(c)     Granting such further relief as the Court may deem just and equitable.

Dated:  December 8, 2008

*/s/ Douglas W. Kassebaum*
Clinton E. Cutler (#158094)
Faye Knowles (#56959)
Douglas W. Kassebaum (#386802)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis MN  55402-1425
612-492-7292
612-492-7077  fax
dkassebaum@fredlaw.com

Attorneys for the Debtors

4464045_1.doc/058506.0887

## <u>VERIFICATION</u>

I, Erik P. Dove, am Vice President, Treasurer and Assistant Secretary of Rosedale Dodge, Inc.  Based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: ~~November~~ December 9 , 2008

Signed: _____
Erik P. Dove

4464045_1.doc/058506.0887

# EXHIBIT A

**Wages**

Pay Period                 11/21/08 - 12/05/08

| Total Employees | 558 | |
| --- | --- | --- |
| Admin | | 70 |
| Production | | 488 |
| Other (name) | | 0 |

| Total Average payroll | 602,000 | |
| --- | --- | --- |
| Net | | 443,100 |
| Taxes (employee) | | 158,900 |

**Benefits** (employer premiums accrued)

| Health | 42,310.00 |
| --- | --- |
| Life | 6,522.00 |
| Dental | 4,017.00 |

4121998_1



| Corporate Name | State Incorporated | Locations | Count |
|---|---|---|---|
| Southwest Tex Leasing Co., Inc. 74-2242912 | Texas | Austin District | 29 |
| | | East Central TX Dist | 9 |
| | | Corp - various | 70 |
| | | Dallas District | 5 |
| | | Houston District | 26 |
| | | El Paso District | 27 |
| | | San Antonio District | 8 |
| | | South Texas District | 7 |
| | | | **181** |
| Coast Leasing Corp 33-0826946 | California | CA District | 17 |
| | | San Diego Hard Rock | 1 |
| | | San Diego District | 8 |
| | | | **26** |
| Floral Leasing Corp 20-5204472 | Florida | Florida District | **75** |
| Iliad Leasing Corp 26-1373499 | Illinois | Illinois District | **16** |
| Miso Leasing Corp 20-4235383 | Missouri | Missouri District | **4** |
| Nuggest Leasing Corp 74-2617483 | Nevada | Hard Rock Hotel | 1 |
| | | Reno District | 4 |
| | | | **5** |
| Okra Leasing Corp 73-1423480 | Oklahoma | | **0** |
| Rainier Leasing Corp 91-1590358 | Washington | Washington District | **7** |
| San Antonio Rental & Leasing Co 86-0647941 | Arizona | AZ District | **54** |
| Steamboat Springs Rental & Leasing, Inc. 84-0950773 | Colorado | Colorado Dist | **112** |
| Sun Leasing Coporation 74-2564445 | New Mexico | New Mexico District | **5** |
| Tradewinds U-Drive, Inc. 99-0221185 | Hawaii | Hawaii District | **17** |
| Ute Leasing Corporation 87-0479002 | Utah | Utah District | **56** |
| **Total Active as of 12/5/08** | | | **558** |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| ARC Venture Holding, Inc., | Case No. BKY 08-46367 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Southwest-Tex Leasing Co., Inc., | Case No. BKY 08-46368 |
| d/b/a/ Advantage | Chapter 11 Case |
| Debtor. | |

| | |
|---|---|
| Advantage Rent-A-Car, Inc., | Case No. BKY 08-46369 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Coast Leasing Corp., | Case No. BKY 08-46370 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Floral Leasing Corp., | Case No. BKY 08-46371 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Iliad Leasing Corp., | Case No. BKY 08-46372 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Miso Leasing Corp., | Case No. BKY 08-46373 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Nugget Leasing Corp., | Case No. BKY 08-46374 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Okra Leasing Corp., | Case No. BKY 08-46375 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Rainier Leasing Corp., | Case No. BKY 08-46376 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| San Antonio Rental & Leasing Co., Inc., Debtor. | Case No. BKY 08-46377 Chapter 11 Case |
| Steamboat Springs Rental & Leasing Co., Inc., Debtor. | Case No. BKY 08-46379 Chapter 11 Case |
| Sun Leasing Corporation, Debtor. | Case No. BKY 08-46380 Chapter 11 Case |
| Tradewinds U-Drive, Inc., Debtor. | Case No. BKY 08-46383 Chapter 11 Case |
| Ute Leasing Corporation, Debtor. | Case No. BKY 08-46384 Chapter 11 Case |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR EXPEDITED HEARING AND FOR AN ORDER
AUTHORIZING DEBTORS TO PAY ACCRUED
AND OUTSTANDING PRE-PETITION WAGES,
PAYROLL TAXES AND EMPLOYEE BENEFITS**

The above-listed Debtors ("Debtors") seek entry of an order authorizing them to pay accrued pre-petition wages, payroll taxes and employee benefits. The motion should be granted because the Debtors have a compelling business justification for paying these obligations. The Debtors will lose the goodwill of their employees and may lose the employees if these payments are not made. Thus, the payment of these claims is important to the Debtors' ongoing operations and effective resolution of these cases. The facts in support of this motion are set forth in the verified motion.

2

## LEGAL ANALYSIS

I.   **THE COURT HAS AUTHORITY TO APPROVE A POST-PETITION PAYMENT OF A PRE-PETITION CLAIM.**

Nowhere in the Bankruptcy Code is a debtor expressly prohibited from making post-petition payment of a pre-petition claim, as the Debtors propose to do here.  Two provisions of the Code, however, suggest that obtaining court approval is required or, at least, prudent.  Code § 363(b) provides that after notice and a hearing, the debtor may use property of the estate other than in the ordinary course of business.  And Code § 549 allows a debtor to avoid the post-petition transfer of property that is not authorized by the Code or by the court.  Thus, the Bankruptcy Code, including these provisions, establishes this Court's authority to approve a post-petition payment of a pre-petition claim, as the Debtors propose here.

A.   **The Bankruptcy Code Authorizes Payment of Certain Pre-Petition Claims.**

Bankruptcy Code § 363 allows a debtor to pay claims not in the ordinary course of business, with court authorization.  It is in the ordinary course of business for a company to pay wages, salaries, and employee benefits.  See, In re Tusa-Expo Holdings, Inc., 2008 WL 4857954 (Bankr. N.D. Tex. 2008).  Several courts have suggested, however, that satisfaction of such an obligation that accrued pre-petition is not in the ordinary course, and therefore requires court approval.  See, In re K-Mart Corp., 359 F.3d 866, 872 (7th Cir. 2004); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  Chapter 11 practice in this District and, counsel believes, elsewhere, has also generally accepted this understanding, and debtors frequently request court authorization to pay wages, salaries and employee benefits that accrued pre-petition.

Paying employee claims that accrued pre-petition, like any other use of property outside the ordinary course of business, is appropriate if the debtor demonstrates a "business justification" for making such payments. As stated by the court in the <u>Ionosphere Clubs</u> case,

> [s]ection 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under section 363(b).

<u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. at 175 (citations omitted); <u>see also</u> <u>Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.)</u>, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (noting that court allowed the debtor to continue payment of pre-petition wages and salary, and other benefits with an aggregate value exceeding $250,000,000 because it was consistent with the debtor's "imperatives"). Payment of pre-petition claims is appropriate when payment will help to "stabilize [the] debtor's business relationships without significantly hurting any party." Russell A. Eisenberg and Frances F. Gecker. <u>The Doctrine of Necessity and its Parameters</u>, 73 Marq. L. Rev. 1 (1989); <u>see also</u> <u>In re UNR Industries, Inc.</u>, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992). Thus, where a debtor can establish the above factors, the court should approve the post-petition payment of pre-petition accrued employee benefits.

## B. The Code Recognizes the "Doctrine of Necessity," which Authorizes Payment of Certain Pre-Petition Claims.

The Doctrine of Necessity recognizes that in certain circumstances it is in the best interest of all concerned to pay certain pre-petition creditors out of turn, as an inducement to them to continue working for, or doing business with, the debtor. <u>See</u> <u>Miltenberger v. Logansport</u>, 106 U.S. 286 (1882). As the above citation indicates, this doctrine predated the Code by many years. Nonetheless, the idea that it is in the best interests of all concerned to pay such claims as are necessary to keep the debtor in business, and to keep the debtor in business and its employees

4

in wage-paying jobs has survived and has been recognized under the Code. See, e.g., In re Payless Cashways, Inc., 268 B.R. 543 (Bankr. W.D. Mo. 2001); In re Just For Feet, 242 B.R. 821 (D. Del. 1999); In re Equal Net Communications Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000); In re Gulf Air, Inc., 112 B.R. 152 (Bankr. W.D. La. 1989); In re Ionosphere Clubs, Inc., supra.

In applying the Doctrine of Necessity, other courts have relied on Code § 105 and/or 549. Section 105(a) grants the court authority to issue any order "necessary or appropriate to carry out the provisions" of the Code, and also provides a basis for authorizing the debtor to pay accrued pre-petition wages, salary and benefits. See In re Ionosphere Clubs, Inc., 98 B.R. at 175; In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Oh. 1991). And Code § 549(a)(2)(b) recognizes that the court at times may authorize post-petition payment of pre-petition debts. In re Payless Cashways, Inc., 268 B.R. at 546; Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.), 37 B.R. 334, 336 n.3 (Bankr. W.D. Mo. 1984); Eisenberg & Gecker, supra.

Thus, the Code furnishes several bases for post-petition payment of pre-petition claims in the right circumstances. This is true notwithstanding the decision in the case of In re K-Mart Corp., 359 F.3d 866 (7th Cir. 2004). In K-Mart, the court questioned whether the bankruptcy court had authority to approve payments to "critical vendors." In that case, the appellate court ruled that the court had not established its authority to do so. In so ruling, however, the court also recognized that Code § 363(b) might provide a basis for authorizing such payments in the right circumstance. In re K-Mart Corp., 359 F.3d at 872. The court suggested that to justify a request for authority to pay pre-petition claims, the debtor should demonstrate that it will suffer damage if the payment is not made,[1] and that other creditors will be as well-off with the payment

---

[1]    The K-Mart case dealt with payment to critical vendors, and the court suggested that the debtor would need to make a showing that vendors not paid for pre-petition deliveries will refuse to make post-petition deliveries. In the employee situation, an analogous damage would be the risk of employees terminating their employment or harboring ill will toward the debtor which adversely affects performance. Such factors are present here.

as without.  Id.  Where a debtor can make such a showing, it appears that even the Seventh

Circuit would overcome its skepticism and allow post-petition payment of a pre-petition claim.

Moreover, as the court recently recognized in  In re Tusa-Expo Holdings, Inc., 2008 WL

4857954 (Bankr. N.D. Tex. 2008), employees are not situated similarly with other unsecured

creditors such as "critical vendors."  Congress has given a preferred status to employee claims in

Code sections 507(a)(4) and (5), and payment of these claims in advance of dealing with claims

of lesser status does not disadvantage unsecured creditors.  Id at *2.  Even though the wage

motion in Tusa-Expo was not opposed, the court deemed it important "that a prospective chapter

11 debtor be confident that, absent a question as to whether continuation of its operations is

appropriate, prepetition wage and benefit obligations will continue during chapter 11 to be

honored on a timely basis. . .it would be an abuse of discretion not to grant the payment of the

priority prepetition wages within the statutory limit. . ."  Id at *1.

## II.    POST-PETITION    PAYMENT    OF    PRE-PETITION    CLAIMS    ARE APPROPRIATE IN THESE CASES.

In applying the provisions of the Bankruptcy Code and the Doctrine of Necessity

discussed above, the Court should be guided by practicality and common sense.  In re Payless

Cashways, 268 B.R. at 546.  This is particularly important when the Court considers payment to

employees.   Courts have long recognized the importance of maintaining the good will of

employees.  In LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.), 116 B.R. 887, 898

(Bankr. S.D.N.Y. 1990), the court stated:

> Additionally, employee good will and contentment in an asset
> which is vital to the continuation of a debtor's operation and its
> ability to effectively reorganize during the Chapter 11 process.

As the court noted in Tusa-Expo:

> Clearly a debtor's employees are among those creditors with
> whom the debtor must deal.  Absent competent personnel, it is

> doubtful that any debtor would be able to operate its business as contemplated by Code section 1108. . . [A]s a practical matter, no debtor can afford to lose very many of its employees, especially in a chapter 11 case's early days. . . . Second, continuity of conduct of business is important in a newly filed Chapter 11 case. . . Employees familiar with the debtor's operations will be essential to [all of the early case responsibilities]. . . Third, even if employees remain with a debtor notwithstanding non-payment of prepetition wages and benefits, it is probable that their work would be [adversely] affected by their loss of income.

In the Debtors' cases, employees are the core of their operations. If payment of wages and benefits is postponed to the close of the case, the Debtors' going-concern value will be threatened by employee losses and ill will. To the extent the Debtors' operations suffer, creditors also suffer. It is in the best interest of creditors that wages and benefits be paid to employees to maintain their good will. Moreover, no party is harmed by such payments. The amount the Debtors seek to pay is within the priority amounts established by Code §§ 507(a)(4) and (5). The issue is really one of timing of payment, and creditors are not harmed, they are benefited by payment as Debtors propose.

## CONCLUSION

The proposed payments are supported by a good business justification and are consistent with the priority scheme designed by Congress. In this case, even the stringent requirements of the K-Mart decision are met. For these reasons, this Court should enter an order authorizing Debtors to pay the accrued pre-petition wages, taxes, and benefits of the employees set out in the motion, and Debtors request that the Court enter an order authorizing such payment.

FREDRIKSON & BYRON, P.A.

Date: December 8, 2008

_____ *e/ Clinton E. Cutler* _____
Clinton E. Cutler (#158094)
Faye Knowles (#56959)
Douglas Kassebaum (#386802)
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
ccutler@fredlaw.com
fknowles@fredlaw.com
dkassebaum@fredlaw.com

4464026_1.doc/058506.0887

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| ARC Venture Holding, Inc., | Case No. BKY 08-46367 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Southwest-Tex Leasing Co., Inc., | Case No. BKY 08-46368 |
| d/b/a/ Advantage | Chapter 11 Case |
| Debtor. | |

| | |
|---|---|
| Advantage Rent-A-Car, Inc., | Case No. BKY 08-46369 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Coast Leasing Corp., | Case No. BKY 08-46370 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Floral Leasing Corp., | Case No. BKY 08-46371 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Iliad Leasing Corp., | Case No. BKY 08-46372 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Miso Leasing Corp., | Case No. BKY 08-46373 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Nugget Leasing Corp., | Case No. BKY 08-46374 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Okra Leasing Corp., | Case No. BKY 08-46375 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Rainier Leasing Corp., | Case No. BKY 08-46376 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| San Antonio Rental & Leasing Co., Inc.,<br>Debtor. | Case No. BKY 08-46377<br>Chapter 11 Case |
| Steamboat Springs Rental & Leasing Co., Inc.,<br>Debtor. | Case No. BKY 08-46379<br>Chapter 11 Case |
| Sun Leasing Corporation,<br>Debtor. | Case No. BKY 08-46380<br>Chapter 11 Case |
| Tradewinds U-Drive, Inc.,<br>Debtor. | Case No. BKY 08-46383<br>Chapter 11 Case |
| Ute Leasing Corporation,<br>Debtor. | Case No. BKY 08-46384<br>Chapter 11 Case |

**ORDER FOR EXPEDITED HEARING AND
AUTHORIZING DEBTORS TO PAY ACCRUED
AND OUTSTANDING PRE-PETITION WAGES,
PAYROLL TAXES AND EMPLOYEE BENEFITS**

The motion of the Debtors for an Order for Expedited Hearing and Order Authorizing Debtors to Pay Accrued and Outstanding Pre-Petition Wages, Payroll Taxes and Employee Benefits came before the undersigned United States Bankruptcy Judge.  Appearances are noted on the record.

Based on the arguments of counsel, all of the files, records and proceedings herein, the Court having been advised in the premises, and the Court's findings of fact and conclusions of law, if any, having been stated orally and recorded in open court following the close of evidence,

IT IS HEREBY ORDERED that:

1.      The Motion for expedited relief is granted.

2

2.      Debtors are hereby authorized, but not required, to pay accrued pre-petition wages, salaries, and commissions, including applicable payroll taxes, for the Debtors' employees, in the approximate amount of $602,000 (the "Compensation Expenses"), subject to paragraph 3 below.

3.      Debtors are hereby authorized, but not required, to pay other pre-petition employee benefits as defined in the Motion, the aggregate of which with compensation expenses shall not exceed the priority dollar limit established by 11 U.S.C. §§ 507(a)(4) and (5) as to each employee (collectively with the Compensation Expenses, the "Approved Expenses").

4.      Debtors are hereby authorized, but not required, to pay any funds withheld from employee wages as directed by the employee or on the employee's behalf.

5.      The financial institutions at which Debtors maintain payroll and operating accounts are hereby authorized to honor all instruments presented in payment of the Approved Expenses.


Dated: _____, 2008      _____

Dennis D. O'Brien
United States Bankruptcy Judge


4464019_1.doc/058506.0887

3